UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CARTER

| UNITED STATES OF AMERICA | SEALED INDICTMENT |
|---|---|
| v. | 25 Cr. |
| RAMON DIAZ JR., | |
| Defendant. | |

25 CRIM 125

The Grand Jury charges:

## INTRODUCTION

1. On March 29, 2020, in the wake of the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Among other things, the CARES Act expanded the Small Business Administration's (the "SBA") Economic Injury Disaster Loan ("EIDL") program to provide vital economic support to help small businesses overcome the loss of revenue they experienced due to COVID-19. EIDL loans are low-interest loans made directly by the SBA to eligible small businesses, and they may be used for working capital and other normal operating expenses, such as payroll, rent or mortgage payments, utilities, and the payment of business debts until normal operations resume.

2. In or about early 2022, RAMON DIAZ JR., the defendant, fraudulently obtained approximately $750,000 of EIDL loans from the SBA for his restaurants in Harlem, New York ("Restaurant-1") and Englewood, New Jersey ("Restaurant-2"). DIAZ fraudulently obtained these loans in two ways. First, shortly before the SBA disbursed the loans, DIAZ falsely certified that Restaurant-1 had experienced no material adverse change in its financial condition, when in fact it had ceased operations entirely. Second, DIAZ falsely assured the SBA that he would use the loan proceeds solely as working capital for his restaurants, when in fact he used the loan proceeds

for his own personal benefit, including by transferring more than $400,000 of the loan proceeds to his personal brokerage account and purchasing securities.

## DIAZ'S FRAUD SCHEME

3. On or about March 31, 2020, RAMON DIAZ JR., the defendant, electronically submitted EIDL loan applications for each of Restaurant-1 and Restaurant-2. On or about April 18, 2020, the SBA declined both loan applications but provided DIAZ with a $10,000 EIDL advance for each restaurant, which was not required to be repaid.

4. On or about April 30, 2021, RAMON DIAZ JR., the defendant, electronically renewed his EIDL loan application for Restaurant-2.

5. Then, on or about November 9, 2021, RAMON DIAZ JR., the defendant, electronically renewed his EIDL loan application for Restaurant-1. In connection with this renewed application, DIAZ provided Restaurant-1's monthly receipts between in or about January 2019 and in or about October 2021. For October 2021, DIAZ represented that Restaurant-1 received $222,981 in gross receipts.

6. At the same time that he renewed his EIDL application for Restaurant-1, RAMON DIAZ JR., the defendant, was taking steps to close that business. For example, on or about November 8, 2021—one day before he filed his renewed EIDL loan application for Restaurant-1—DIAZ emailed Restaurant-1's landlord the following: "[A]s you know our contract with the city terminated as of Friday - Nov 5th - we began the clean up and sanitizing of the kitchen and began to clear up the basement - please let me know the status of the [lease] termination agreement for review." By in or about the end of November 2021, Restaurant-1 had ceased all operations. On or about December 23, 2021, Restaurant-1's landlord emailed DIAZ a fully executed copy of the lease termination agreement for Restaurant-1's premises.

7.      On or about February 7, 2022, the SBA approved the loan application for Restaurant-1 in the amount of $250,000, but did not disburse any funds until DIAZ executed a standard written contract with the SBA governing the terms of the loan, which was called a Loan Authorization Agreement ("LAA").

8.      That same day, on or about February 7, 2022, RAMON DIAZ JR., the defendant, signed a LAA for Restaurant-1, despite having by that time ceased Restaurant-1's operations. In the LAA, DIAZ falsely certified that "[t]here has been no substantial adverse change in [Restaurant-1's] financial condition (and organization, in case of a business borrower) since the date of the application for this Loan." DIAZ also agreed, on behalf of Restaurant-1, that he would "use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter." As described below, DIAZ instead used most of these funds to purchase securities through his personal brokerage account, and, therefore, this representation was also false.

9.      On or about February 11, 2022, the SBA transferred approximately $249,900 in EIDL funds into Restaurant-1's operating account. Immediately before the SBA loan transfer, Restaurant-1's operating account held approximately $14,569. Three days later, on or about February 14, 2022, RAMON DIAZ JR., the defendant, transferred approximately $15,750 from Restaurant-1's operating account to a business ("Business-1") based in Dutchess County, New York, whose recipient bank account was also based in Dutchess County. On or about February 17, 2022, DIAZ transferred approximately $130,000 from Restaurant-1's operating account to DIAZ's personal brokerage account. The next day, on or about February 18, 2022, DIAZ purchased approximately $252,396.36 worth of securities using his personal brokerage account.

10. On or about February 15, 2022, the SBA approved the loan application for Restaurant-2 in the amount of $500,000, but again did not disburse any funds until DIAZ executed an LAA with the SBA.

11. On or about February 16, 2022, RAMON DIAZ JR., the defendant, signed a substantially identical LAA for Restaurant-2. DIAZ again agreed, on behalf of Restaurant-2, that he would "use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter." As described below, DIAZ again used most of these funds to purchase securities through his personal brokerage account, and, therefore, this representation was also false.

12. On or about February 23, 2022, the SBA transferred approximately $499,900 in EIDL funds into Restaurant-2's operating account. Immediately before the SBA loan transfer, Restaurant-2's operating account held approximately $32,853. The same day, RAMON DIAZ JR., the defendant, transferred approximately $24,975 from Restaurant-2's operating account to Business-1. On or about March 7, 2022, DIAZ transferred approximately $325,000 from Restaurant-2's operating account to a bank account held in the name of "Institute Realty LLC" (the "Institute Realty account"), for which DIAZ is the owner and primary signatory. On or about March 8, 2022, DIAZ transferred approximately $300,000 from the Institute Realty account to DIAZ's personal brokerage account. Between March 9, 2022 and March 14, 2022, DIAZ purchased approximately $420,066.82 worth of securities using his brokerage account.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Wire Fraud)

13. From at least in or about March 2020 through at least in or about March 2022, in the Southern District of New York and elsewhere, RAMON DIAZ JR., the defendant, knowingly

4

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DIAZ engaged in a scheme to fraudulently obtain COVID-19 Economic Injury Disaster Loans from the Small Business Administration, and sent and received, and caused others to send and receive, wire communications to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

14. As a result of committing the offense alleged in Count One of this Indictment, RAMON DIAZ JR., the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

15. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

  e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOR███████N

*Matthew Podolsky*
MATTHEW PODOLSKY
Acting United States Attorney